**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-61191-BLOOM**

EMMANUEL GUSTAVE,

    Petitioner,

v.

FLORIDA DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

**ORDER**

**THIS CAUSE** is before the Court upon Emmanuel Gustave's ("Gustave" or "Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, ECF No. [1] ("Petition"), filed on June 3, 2021.[1] Gustave challenges the constitutionality of his convictions and sentences in Broward County Case No. 2013-004472-CF-A. *See generally id.* Respondent Florida Department of Corrections ("Respondent") filed a Response to Order to Show Cause, ECF No. [11] ("Response"), and an Appendix to the Response, ECF No. [12], with attached exhibits, ECF No. [12-1]. Respondent also filed a Notice of Filing Transcripts, ECF No. [13], with attached transcripts, ECF Nos. [13-1], [13-2], and [13-3]. Gustave thereafter filed a Reply, ECF No. [16] ("Reply"). The Court has carefully considered the Petition, all supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Petition is denied.

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).

I. **BACKGROUND**

On April 9, 2013, an Information was filed in Amended Case No. 13-4472-CF-10A in the Seventeenth Judicial Circuit for Broward County, charging Gustave with committing sexual battery while standing in a position of familial or custodial authority, on or between May 1, 2008 and April 29, 2012, and impregnating a child, on or between May 1, 2008 and August 31, 2008. ECF No. [12-1] at 2. He pleaded not guilty and went to trial on the charges. ECF No. [13-1] at 18.

***Evidence Presented at Trial***.

The victim, A.F., testified that even though Gustave was not her biological father, he was her stepfather from the age of two and she called him "daddy." *Id.* at 42-43, 48. A.F. testified that when she was seven years old, Gustave began engaging in sexual activities with her that included kissing, touching, and oral sex. *Id.* at 45. A.F. testified that Gustave began having sexual intercourse with her at night—when her siblings were asleep and her mother was working—when she was eleven years old. *Id.* at 49-51. She testified that Gustave had sex with her "very often" while she was in middle school, continuing almost every day until a day or two before she reported the abuse at age sixteen. *Id.* at 52, 71, 80-82, 85.

A.F. testified that when she was twelve years old, she became pregnant with Gustave's son. *Id.* at 55-56, 123. She testified that out of fear, she made up lies about the father's identity. *Id.* at 57-58, 124. She also explained that Gustave tried to get her an abortion but was unable to do so without her mother's involvement. *Id.* at 56. Because Gustave would not tell A.F.'s mother about the pregnancy, she kept the child and gave birth when she was thirteen and in the eighth grade. *Id.* at 58-59. She testified that Gustave continued to have sexual intercourse with her after the child was born resulting in three additional pregnancies; however, Gustave gave her pills to terminate the pregnancies. *Id.* at 72-73.

While on a school field trip at age sixteen, A.F. was overheard by a school counselor confiding in her best friend, Cynthia Joseph, that Gustave abused her and was the father of her child. *Id.* at 59-60, 73. The counselor, Rose Hall, confronted A.F. about the disclosure and notified the police. *Id.* at 63. In speaking to the counselor and police, A.F. initially denied her statements but later admitted the abuse. *Id.* at 62-63, 233-34. She also stated that Gustave would sometimes send her pictures of his penis and ask her to send him naked pictures of herself. *Id.* at 91-93. A.F.'s testimony was corroborated by Cynthia Joseph and Rose Hall who, over defense objection, was found to be an expert in child sexual abuse disclosure. *Id.* at 110-111, 157-159.

After learning of the abuse, A.F.'s mother testified that she confronted Gustave who stated that A.F. "came on to him" *Id.* at 127. She later confronted him in a controlled phone call arranged by law enforcement. The call was played for the jury. *Id.* at 262-76. In it, Gustave did not admit his guilt, but instead stated that everything would come out when the DNA results came back. *Id.*

A.F.'s mother further testified to receiving a note offering helpful information from Gustave's former employer, John Longo. *Id.* at 132-33. Longo later told the police that Gustave had confided in him and admitted to the sexual abuse of his stepdaughter. *Id.* at 193-195, 211. Longo testified that Gustave offered to show explicit pictures of A.F. and mentioned fleeing to Haiti to escape charges. *Id.* at 195-198, 211. Longo cooperated with police, and Gustave was arrested on June 8, 2012, while picking up his paycheck. *Id.* at 199, 280, 292.

Detective Michael Anthony Vadnal from the Broward Sheriff's Office ("BSO") Special Victim's Unit took DNA swabs from A.F., her child, and Gustave. *Id.* at 254, 256. Those swabs were analyzed by Paula Bolivar from the BSO crime lab. Bolivar was received by the trial court as an expert in the field of forensic DNA analysis. *Id.* at 302-13. After testing the DNA samples from Gustave, A.F., and A.F.'s child, Gustave could not be excluded as the possible biological

3

father of A.F.'s child *Id.* at 317-24, 369-70. Out of fifteen different markers that were tested, Gustave was consistent with all fifteen, as well as the sex determining marker. *Id.* at 324-36. Bolivar confirmed that the FBI has set thirteen core markers for purposes of DNA comparison in its FBI CODIS database. *Id.* at 325. The case was referred to Dr. Martin Tracey, a geneticist, to determine the probability of paternity. *Id.* at 327, 370.

Dr. Tracey was received as an expert in DNA analysis and paternity statistics and testified that the probability that Gustave was the biological father of A.F.'s child was 99.9999 percent *Id.* at 392-93, 404, 406-07. Alternatively, this meant that the probability of reaching into the general population of sexually mature males and finding another man with fifteen genes that matched was less than one in 130 million. *Id.* at 406-07, 410.

Gustave testified in his defense. He stated that he treated A.F. as his daughter and had known her since she was two years old. *Id.* at 422-25. He denied having vaginal intercourse with A.F. and denied that her child was his, claiming she made it up to get him out of the house so she could have more freedom. *Id.* at 431-32, 460. He denied making any type of admission of guilt to his wife or former employer. *Id.* at 432, 434-35. In sum, Gustave denied any sexually inappropriate contact with A.F. and claimed "everybody [was] lying." *Id.* at 445-46, 454, 467

### *Remaining Procedural History.*

The jury found Gustave guilty of Count I as charged in the Information and found that "[t]he Defendant's penis did penetrate the vagina of A.F." ECF No. [12-1] at 2-7. The jury found Petitioner guilty of Count II, as charged in the Information. *Id.*

On Count I, the court sentenced Gustave to twenty-five years in prison, followed by twenty-four months of community control, followed by thirty-six months of sex offender

probation. ECF No. [12-1] at 15-24, 28-35. On Count II, the court sentenced him to five years prison, to run consecutive to Count I. ECF No. [12-1] at 15-24.

On August 16, 2016, the Fourth District Court of Appeal per curiam affirmed Petitioner's conviction and sentence. ECF No. [12-1] at 98.

On December 13, 2016, Gustave filed a *pro se* Motion for Postconviction Relief. ECF No. [12-1] at 102-25. The State responded and Gustave replied. ECF No. [12-1] at 127-60. The court entered an order denying Gustave's Motion for Postconviction Relief, adopting the reasoning in the State's response. ECF No. [12-1] at 162-63. Gustave filed a Motion for Rehearing as well as a Notice of Appeal of the trial court's order denying his Motion for Postconviction Relief. ECF No. [12-1] at 162-72. The court denied the Motion for Rehearing and the Fourth District Court of Appeal per curiam affirmed. ECF No. [12-1] at 176-179, 294.

On June 3, 2021, Gustave filed the instant Petition. ECF No. [1]. He asserts two claims of ineffective assistance of counsel. *Id.* at 4-5.

## II. LEGAL STANDARD

### *Deference Under § 2254*.

A court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Abdul–Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (quotation marks omitted). This standard is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks omitted).

According to AEDPA, a federal court may not grant a habeas petitioner relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017) (citing 28 U.S.C. § 2254(d)).

A state court decision is "contrary to" established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law is different from an incorrect application of federal law. *Id.* at 410. Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted). If the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Even summary rejection of a claim, without explanation, qualifies as an adjudication on the merits, warranting deference. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1351 (11th Cir. 2019). If the state court's merits determination is unaccompanied by an explanation, federal courts should "'look through' the unexplained decision to the last related state-

court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. Furthermore, a decision is still an adjudication on the merits when it "addresses some but not all of a defendant's claims." *Johnson v. Williams*, 568 U.S. 289, 298 (2013).

Moreover, a federal district court is authorized to deny a claim for federal habeas corpus relief when the claim is subject to rejection under *de novo* review, regardless of whether AEDPA deference applies. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (holding federal courts may deny petitions for writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, as a habeas petitioner will not be entitled to habeas relief if his claim is rejected following *de novo* review); *Connor v. GDCP Warden*, 784 F.3d 752, 767 (11th Cir. 2015).

AEDPA "imposes a highly deferential standard for evaluating state-court rulings . . . , and demands that state-court decisions be given the benefit of the doubt[.]" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation marks and footnote omitted). Deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

### *Ineffective Assistance of Counsel*.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings. *See Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective

7

assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 20 (2013). "Where the highly deferential standards mandated by *Strickland* and AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both (1) that counsel's performance was deficient; and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687-88; *see also Harrington*, 562 U.S. at 104.

To establish deficient performance, the petitioner must show that, considering all circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *See Strickland*, 466 U.S. at 690-91. The court's review of counsel's performance should focus on "not what is possible or 'what is prudent or appropriate, but only [on] what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (footnote omitted; quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Regarding the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient

8

to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).

### III. DISCUSSION

#### A. Timeliness and Exhaustion/Procedural Default

The parties agree that the Petition is timely filed. ECF Nos. [1] at 9, [11] at 3. They also agree that both grounds were exhausted. ECF Nos. [1] at 5, 6, [11] at 4, 5. Having reviewed the record in full, the Court finds that the Petition was timely filed and both grounds were exhausted.

The parties dispute the merits of Gustave's ineffective assistance of counsel ("IAC") claims in Grounds One and Two of the Petition.

#### B. IAC Ground One

Gustave asserts ineffective assistance in trial counsel's failure to obtain an independent DNA test regarding the paternity of A.F.'s child. ECF No. [1] at 4. He asserts that an independent DNA test would have refuted the DNA results presented by the State at trial and exonerated him. *Id.* He also alleges that issues with the lab and a failure to comply with procedures compromised the DNA results in his case. *Id.* The same issues were raised in Ground One of Gustave's Motion for Postconviction Relief, ECF No. [12-1] at 112-15. The State responded to this Motion, ECF No. [12-1] at 127-49, Gustave replied, ECF No. [12-1] at 151-60, and the court denied—adopting and incorporating the reasoning set forth in the State's response and exhibits. ECF No. [12-1] at 162-63.

Having reviewed the record in full, the Court finds nothing unreasonable with the trial court's rejection of IAC Ground One. *Wilson*, 138 S. Ct. at 1192 (requiring a federal court sitting in habeas to defer to "reasonable" reasons given by the state court in rejecting a claim for relief). Gustave asserts that an independent DNA test would have exonerated him. His assertion is purely

9

speculative. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim and do not warrant an evidentiary hearing).

Moreover, had a defense expert made the same findings as the State's experts, it would have been devastating to Gustave's case. His speculation about what an expert might have opined is not a basis for relief. *See Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (noting that complaints of uncalled witnesses, in support of claims of ineffective assistance of counsel, are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative).

The Court agrees with the postconviction court that Gustave's counsel made reasonable strategic choices based on an informed understanding of the law and facts of the case. *See Strickland*, 466 U.S. at 690-91. Gustave also fails to show that "the result of the proceedings would have been different" had trial counsel obtained an independent DNA test. Accordingly, this claim is denied under both the "prejudice" and "deficient performance" prongs of *Strickland*. 466 U.S. at 687-88.

**C. IAC Ground Two**

Gustave alleges ineffective assistance in trial counsel's failure "to obtain and call as a witness a forensic DNA expert on DNA analysis to rebut the DNA testimony and establish Mr. Gustave's actual innocence of the crime." ECF No. [1] at 5. He asserts that if an independent witness had been called, he would have been able "to question the validity of Ms. Bolivar's test results based on using defective or expired outdated buccal swabs, and impeached her testimony." ECF No. [1] at 5. Again, the Court finds the postconviction court's rejection of this claim well-reasoned and supported by the record. *Wilson*, 138 S. Ct. at 1192.

The Court adopts the reasoning provided in the prior section and finds that Gustave's claims regarding the testimony of a DNA expert witness are speculative and conclusory. Therefore, he fails to satisfy the "prejudice" prong of S*trickland.* The Court also notes that Gustave's counsel challenged the DNA evidence in pretrial motions and argued the issue concerning the expired buccal swabs in closing at trial. ECF No. [13-1] at 507-11. The Court therefore finds an absence of "deficient performance" under S*trickland*.

The Court also notes that, post-trial, the State provided a published article based on a controlled study finding that buccal swabs can be used regardless of the printed expiration date, provided the package is intact. ECF No. [12-1] at 251-53. Moreover, a second paternity test, conducted for dependency court, confirmed the DNA results in the criminal case. ECF No. [12-1] at 127-49. Those post-trial developments lend additional support to the already overwhelming evidence of Gustave's guilt at trial. However, the Court does not factor these post-trial developments into its decision in this Petition.

Because Gustave's claims concerning the testimony of a DNA expert witness are wholly speculative and conclusory, he is not entitled to relief. The postconviction court reasonably rejected this claim due to Gustave's failure to establish prejudice from the allegedly deficient performance. ECF No. [12-1], 162-63. Accordingly, this claim is denied under both the "prejudice" and "deficient performance" prongs of *Strickland*. 466 U.S. at 687-88.

### IV. EVIDENTIARY HEARING

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550

11

U.S. 465, 474 (2007); *see also Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016). Here, the issues presented can be resolved based on the record before the Court. Because the Court can "adequately assess [Gustave's] claim[s] without further factual development[,]" Gustave is not entitled to an evidentiary hearing. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

## V. CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal; rather, in order to do so, he must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if Gustave makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where the district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists "would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court rejects a petitioner's claims on procedural grounds, the petitioner must additionally show that "jurists of reason" would find the district court's procedural ruling "debatable." *Id*.

Upon consideration of the record, the Court denies a certificate of appealability on all grounds.

## VI. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner Emmanuel Gustave's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, **ECF No. [1]**, is **DENIED**.

2. A certificate of appealability is **DENIED**.

3. To the extent not otherwise disposed of, any pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

4. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 14, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Emmanuel Gustave
I43242
South Bay Correctional Facility
Inmate Mail/Parcels
600 U S Highway 27 South
South Bay, FL 33493-2233
PRO SE